# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| **JOHNNY RAY GARDNER,** ) | |
| Plaintiff ) | |
| ) | Civil Action No. 2:18cv00037 |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| **ANDREW SAUL,**[1] ) | |
| **Commissioner of Social Security,** ) | By: PAMELA MEADE SARGENT |
| Defendant ) | United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Johnny Ray Gardner, ("Gardner"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying his claim for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 *et seq.* (West 2011 & Supp. 2019). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

---

[1] Andrew Saul became the Commissioner of Social Security on June 17, 2019; therefore, he is automatically substituted as the defendant in this case pursuant to Fed. R. Civ. P. Rule 25(d).

particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Gardner protectively filed his application for DIB on June 16, 2014, alleging disability as of December 13, 2013, based on back and knee pain; prostate problems; a limited use of the left wrist; and vision problems. (Record, ("R."), at 13, 129-30, 151.) The claim was denied initially and upon reconsideration. (R. at 80-82, 86-88, 91-94, 96-98.) Gardner then requested a hearing before an administrative law judge, ("ALJ"). (R. at 99-100.) The ALJ held a hearing on May 30, 2017, at which Gardner was represented by counsel. (R. at 24-47.)

By decision dated October 20, 2017, the ALJ denied Gardner's claim. (R. at 13-20.) The ALJ found that Gardner met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2018. (R. at 15.) The ALJ found that Gardner had not engaged in substantial gainful activity since December 13, 2013, the alleged onset date.[2] (R. at 15.) The ALJ found that Gardner suffered from the "medically determinable impairments" of mild degenerative changes of the lumbar spine and a vision impairment, but he did not suffer from a severe impairment. (R. at 15-16.) Thus, the ALJ concluded that Gardner was not under a disability as defined by the Act and was not eligible for DIB benefits. (R. at 19-20.) *See* 20 C.F.R. § 404.1520(c) (2019).

---

[2] Therefore, Gardner must show that he was disabled between December 13, 2013, the alleged onset date, and October 20, 2017, the date of the ALJ's decision, in order to be eligible for benefits.

After the ALJ issued her decision, Gardner pursued his administrative appeals, (R. at 123-24), but the Appeals Council denied his request for review. (R. at 1-5.) Gardner then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981 (2019). This case is before this court on Gardner's motion for summary judgment filed February 26, 2019, and the Commissioner's motion for summary judgment filed April 11, 2019.

## *II. Facts*

Gardner was born in 1955, (R. at 28, 129), which classifies him as a "person of advanced age" under 20 C.F.R. § 404.1563(e). He has a high school education and past work experience as a bundler for a newspaper factory; a heating, ventilation and air-conditioning helper; a gas attendant; and a furniture deliverer. (R. at 27-28, 41, 152.) Gardner testified that he did not seek medical treatment because he did not have a motor vehicle or health insurance, and he did not have the money to pay for medical services. (R. at 35.) He testified that he took over-the-counter ibuprofen for pain. (R. at 32.) Gardner stated that he suffered from joint pain, including back, neck and shoulder pain. (R. at 36.) He stated that he could lift items weighing up to 30 pounds and could sit and/or stand up to 30 minutes without interruption. (R. at 33.)

Barry Hensley, a vocational expert, also was present and testified at Gardner's hearing. (R. at 40-46.) Hensley testified that a hypothetical individual of Gardner's age, education and work history, who had the residual functional capacity to perform light work;[3] who could not work around concentrated exposure

---

[3] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, he

to hazardous machinery; who could not work around unprotected heights, ladders, ropes and scaffolds or vibrating surfaces; and who would be limited to frequent overhead reaching, could perform Gardner's past work as a gas attendant, if the propane aspect of the job was eliminated. (R. at 42.) He also stated that such an individual could not perform any of Gardner's other past work. (R. at 42.) Hensley was then asked to consider a hypothetical individual who would be limited as indicated by Dr. Kevin Blackwell, D.O. (R. at 42-43.) He stated that such an individual would not be able to perform Gardner's past work. (R. at 43.) Hensley stated that Dr. Blackwell's opinion restricted an individual to performing sedentary[4] to light work. (R. at 43.)

In rendering her decision, the ALJ reviewed medical records from Dr. Josephine Cader, M.D., a state agency physician; Dr. Robert McGuffin, M.D., a state agency physician; Norton Community Hospital; Dr. D. Kevin Blackwell, D.O.; Dr. Brett S. Compton, O.D., an optometrist; and Appalachia Family Health.

On November 13, 2014, Dr. D. Kevin Blackwell, D.O., examined Gardner at the request of Disability Determination Services. (R. at 218-22.) Gardner reported back and bilateral knee pain, the right worse than the left; problems with his right wrist and thumb; and right shoulder pain with limited range of motion. (R. at 219.) Dr. Blackwell reported that Gardner was in no acute distress; he had good mental status; his affect, thought content and general fund of knowledge appeared intact;

---

also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2019).

[4] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2019).

his neck was supple and nontender; his lungs were clear to auscultation; his heart had regular rate and rhythm without murmurs, clicks or rubs; his extremities had no cyanosis or edema; his right acromioclavicular, ("AC"), joint had some prominence and nodularity; he had lumbar musculature tenderness; his gait was symmetrical and balanced; his shoulder and iliac crest heights were good and equal bilaterally; his upper and lower joints had no effusions or obvious deformities and were normal in size, shape, symmetry and strength; his grip strength was 5/5 and equal bilaterally; his fine motor movement and skill activities of the hands were normal; his reflexes in the upper and lower extremities were good and equal bilaterally; his proprioception was intact; and he had normal range of motion of the back, shoulders and knees. (R. at 218, 220-21.) X-rays of Gardner's right knee were normal. (R. at 213.) X-rays of Gardner's lumbar spine showed mild degenerative changes scattered throughout the lumbar spine. (R. at 215.) Dr. Blackwell diagnosed chronic back pain; chronic bilateral knee pain; right shoulder pain; and right wrist pain. (R. at 221.)

Dr. Blackwell opined that Gardner could sit up to four hours in an eight-hour workday with positional change every 15 minutes; he could stand up to two hours in an eight-hour workday with positional change every 15 to 20 minutes; he could not perform abovehead reaching activities with the right arm, and he could only reach abovehead up to one-third of the workday with the left arm; he could operate foot pedals and perform kneeling activities up to one-third of the workday; he could lift items weighing up to 30 pounds occasionally and 20 pounds frequently; he had no vision, communicative, hearing or environmental limitations or limitations involving hand usage, including fine motor movement and skill activities; and he should avoid squatting. (R. at 221.)

On January 27, 2015, Dr. Brett S. Compton, O.D., an optometrist, examined

Gardner at the request of Disability Determination Services. (R. at 224-25.) Gardner reported decreased vision; however, Dr. Compton noted that Gardner was able to navigate the office without complication. (R. at 224.) Gardner's pupils and confrontation fields were grossly normal in both eyes. (R. at 224.) Gardner's best corrected vision in both eyes was 20/20. (R. at 224.) Dr. Compton reported that Gardner had a normal level of visual function, therefore finding that he could participate in the normal workforce as far as visual functioning. (R. at 225.)

On February 2, 2015, Dr. Josephine Cader, M.D., a state agency physician, completed a medical assessment, indicating that Gardner had the residual functional capacity to perform medium[5] work. (R. at 56-58.) She found that Gardner could frequently push and/or pull with his right upper extremity, climb, balance, stoop, kneel, crouch and crawl. (R. at 57.) Dr. Cader opined that Gardner had an ability to frequently reach overhead with his right upper extremity. (R. at 57-58.) No visual, communicative or environmental limitations were noted. (R. at 58.)

On May 21, 2015, Gardner was seen at Appalachia Family Health for complaints of a knot on his left elbow. (R. at 226-28.) On examination, Gardner was in no acute distress; he had a normal gait; his left upper extremity had normal palpation and range of motion with no joint instability; he had tophi[6] on the left elbow; his motor examination revealed normal tone, bulk and strength; he had

---

[5] Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If an individual can do medium work, he also can do sedentary and light work. *See* 20 C.F.R. § 404.1567(c) (2019).

[6] Tophi is plural for tophus. Tophus happens when crystals of the compound known as sodium urate monohydrate, or uric acid, builds up around the joints. Tophi often look like swollen, bulbous growths on the joints just under the skin. Tophi are a symptom of gout. *See* healthline.com/health/tophus (last visited Mar. 6, 2020.)

appropriate judgment and good insight; his recent and remote memory was intact; and his mood was euthymic with an appropriate affect. (R. at 227.) Dr. Esther Ajjarapu, M.D., diagnosed chronic gouty arthropathy with tophus and acute sinusitis, and she administered a steroid injection. (R. at 227-28.)

On June 11, 2015, Dr. Robert McGuffin, M.D., a state agency physician, completed a medical assessment, indicating that Gardner had the residual functional capacity to perform medium work. (R. at 69-71.) He found that Gardner could frequently push and/or pull with his right upper extremity, climb, balance, stoop, kneel, crouch and crawl. (R. at 70.) Dr. McGuffin opined that Gardner had an ability to frequently reach overhead with his right upper extremity. (R. at 70-71.) No visual, communicative or environmental limitations were noted. (R. at 71.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2019). *See also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a)(4) (2019).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the

Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A) (West 2011 & Supp. 2019); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided his decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained her findings and her rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Gardner argues that the ALJ failed to properly evaluate his impairments in determining his residual functional capacity. (Plaintiff's Brief In Support Of Motion For Summary Judgment, ("Plaintiff's Brief"), at 4-10.) Gardner argues that the ALJ erred by failing to find that he did not suffer from a severe impairment. (Plaintiff's Brief at 4-10.) He contends that the ALJ failed to properly analyze the opinions of the state agency physicians, who opined that he had the residual functional capacity to perform a limited range of medium work, and the assessment of Dr. Blackwell, who opined that he was limited to performing sedentary to light work. (Plaintiff's Brief at 6-8.)

The ALJ in this case found that Gardner did not suffer from a severe impairment. Based on my review of the record, I do not find that substantial evidence exists to support this finding. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 404.1522(a) (2019). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1522(b) (2019). The Fourth Circuit held in *Evans v. Heckler*, that ""'[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.""" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

The ALJ indicated that she was giving the opinions of the state agency physicians "little weight" because the medical evidence of record did not support their findings. (R. at 18.) After reviewing the medical evidence, both Dr. Cader and Dr. McGuffin opined that Gardner suffered from a spine disorder and a major joint dysfunction, both of which they found to be severe. (R. at 55, 68.) Based on this, they both opined that Gardner had the residual functional capacity to perform a limited range of medium work. (R. at 56-58, 69-71.) In addition, both physicians opined that Gardner could frequently push and/or pull, as well as reach overhead, with his right upper extremity, climb, balance, stoop, kneel, crouch and crawl. (R. at 57-58, 70-71.) The ALJ noted that the state agency physicians "based their opinions upon a thorough review of the objective medical evidence in the record,

and the medical evidence produced after the consultants' reports is consistent with their findings." (R. at 18.) Contrary to this statement, the ALJ's very next sentence is, "[h]owever, [Gardner] has no medically determinable severe impairments that would support these limitations as set forth hereinabove." (R. at 18.) The ALJ further stated that "[t]he limitation to frequent overhead reaching and frequent pushing/pulling with the right upper extremity may seem warranted, giving [Gardner] the benefit of the doubt, and consistent with evidence of some prominence, pain, and nodularity in [Gardner's] right shoulder AC joint as found by Dr. Blackwell, but [Gardner] does not have a medically determinable severe impairment in this extremity." (R. at 18-19.)

The ALJ noted that she was giving Dr. Blackwell's opinion "limited weight." (R. at 19.) Dr. Blackwell opined that Gardner had the residual functional capacity to perform sedentary to light work.[7] (R. at 43, 221.) On examination, Dr. Blackwell noted that Gardner's right shoulder AC joint had some prominence and nodularity, as well as lumbar tenderness. (R. at 221.) Based on this, Dr. Blackwell opined that Gardner could not perform abovehead reaching activities with the right arm and could only reach abovehead up to one-third of the workday with the left arm. (R. at 221.) The ALJ stated that "[t]he evidence might support restrictions on overhead reaching with the right arm, due to Dr. Blackwell's own objective findings, including pain, prominence, and nodularity of the right shoulder AC joint." (R. at 19.) The ALJ went on to say that, "[h]owever, the record lacks evidence to support reaching restrictions with the left arm or limitations upon the use of foot controls." (R. at 19.) Therefore, the ALJ found that Gardner did not

---

[7] The court notes that, should Gardner be found to have the residual functional capacity to perform sedentary to light work, he would be found disabled under the Medical-Vocational Guidelines, ("Grids"), found at 20 C.F.R. Part 404, Subpart P, Appendix 2.

have a medically determinable severe impairment in his right upper extremity. (R. at 15-16, 18-19.)

Based on my review of the ALJ's decision, I do not find that substantial evidence exists to support the ALJ's finding that Gardner did not suffer from a severe impairment. I find that the ALJ's statements are contradictory. While the ALJ noted that the restrictions concerning Gardner's right upper extremity "may seem warranted" and the evidence "might support" the restrictions identified by the state agency physicians and Dr. Blackwell, she went on to find that Gardner "did not have a medically determinable severe impairment in this extremity." (R. at 18-19.) "An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Cottrill v. Apfel*, 102 F. Supp. 2d 627, 634 (D. Md. 2000) (citing *Evans,* 734 F.2d at 1014).

Based on the above, I do not find that substantial evidence exists to support the ALJ's finding that Gardner did not suffer from a severe impairment. An appropriate Order and Judgment will be entered remanding Gardner's claim to the Commissioner for further development.

DATED: March 9, 2020.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE